# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Susanne Zeigler and Alexander M. Mazzola, <br><br> Plaintiffs <br><br> v. <br><br> Las Vegas Metropolitan Police Department; Carl Guilford; Naphcare, Inc.; Doe Officers I-X; and Doe Health Care Providers I-X, <br><br> Defendants | Case No.: 2:11-cv-01301-JAD-VCF <br><br><br> **Order** <br> **[Doc. 45]** |

This civil-rights action arises out of Francisco Sanfilippo's death at the hands of his cellmate Carl Guilford while they were pretrial detainees at the Clark County Detention Center (CCDC). Sanfilippo's representatives[1] sue NaphCare, Inc.—the detention center's contracted medical provider—asserting a variety of constitutional and tort claims all premised on the theory that NaphCare personnel were somehow responsible for non-violent Sanfilippo being housed with Guilford, a bi-polar individual who was refusing to take his prescribed mental-health medication, had killed his six-year-old nephew, and claimed he was hearing voices.[2] NaphCare now moves to dismiss all claims against it under FRCP 12(b)(6). Because I find that the factual allegations against Naphcare are too lacking for me to find plausible claims, I grant the motion to dismiss and give plaintiffs until February 17, 2015, to file a second amended complaint.

---

[1] Sanfilippo's sister Susanne Zeigler sues individually; she and plaintiff Alexander Mazzola also sue as special co-administrators of Sanfilippo's estate.

[2] Doc. 33.

1

**Background**

Sanfilippo was choked and stabbed to death by Guilford in their shared CCDC cell. Sanfilippo was detained in the CCDC on DUI and child-pornography possession charges;[3] Guilford was held on a murder charge for killing his six-year-old nephew.[4]

Plaintiffs allege that Guilford was diagnosed with bipolar disorder and was known to hear voices, speak to spirits, and communicate with the devil,[5] and that he refused to take medication while detained at CCDC.[6] They further allege that the CCDC and NaphCare personnel knew Guilford was violent and mentally ill, and that the CCDC has designated cells for isolating mentally-ill detainees from the general population.[7] Plaintiffs allege, therefore, that the decision to place Sanfilippo—a non-violent offender—in the same cell as Guilford violated Sanfilippo's civil rights under 42 U.S.C. § 1983 and Nevada state tort law.

Plaintiffs sue the Las Vegas Metropolitan Police Department ("Metro," which allegedly runs the CCDC), NaphCare, Inc. (which provides medical services to CCDC detainees under a contract with Clark County); Guilford; and a score of Doe defendants.[8] Against NaphCare they allege: (1) a § 1983 claim for violations of the Eighth and Fourteenth Amendments; (2) that these constitutional violations were the result of "a policy, practice[,] and custom" of "NaphCare to tolerate and ratify . . . medical personnel in disregarding known risks to inmate health and safety"; (3) that Sanfilippo's death was caused by NaphCare's failure to properly train and supervise its employees; (4) that NaphCare was negligent and grossly negligent; and (5) that NaphCare "brought about" Sanfilippo's wrongful death by allowing him to be housed with a violent and mentally unstable cellmate.

---

[3] *Id.*

[4] *Id.*

[5] *Id.* at 4–5.

[6] *Id.* at 4.

[7] *Id.* at 4–5.

[8] *Id.*

Naphcare now moves to dismiss all of the claims against it. It argues that plaintiffs' § 1983 claim must be dismissed because pretrial detainees do not enjoy Eighth Amendment protections, and the rest of the claim fails because plaintiffs have not alleged that Sanfilippo's death resulted from a constitutional violation arising from a NaphCare policy, practice, or custom. NaphCare seeks to dismiss plaintiffs' claims for failure to properly train and supervise its employees because these claims do not target NaphCare. And finally, medical-care contractor NaphCare moves to dismiss all the state-law tort claims against it because plaintiffs failed to attach the affidavit required by NRS §41A.071 for medical-malpractice actions; NaphCare enjoys immunity from suit under Nevada's discretionary-act-immunity statute, NRS § 41.032; and plaintiffs simply have not pled enough facts to state plausible claims under these theories. Plaintiffs filed a cursory opposition and NaphCare replied. Docs. 52, 53. I heard oral argument in January 2014. I now grant the motion to dismiss with leave to amend for the reasons below.

**Discussion**

**A.    A federal plaintiff's pleading obligations**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[9] The purpose of the rule is to afford defendants fair notice "of what the . . . claim is and the grounds upon which it rests."[10] As the United States Supreme Court clarified in *Bell Atlantic Corp. v. Twombly*[11] and *Ashcroft v. Iqbal*,[12] defending a complaint against a Rule 12(b)(6) attack "requires more than labels and conclusions"; it calls on plaintiffs to identify factual allegations that are "enough to raise a right to relief above the

---

[9] Fed. R. Civ. P. 8(a)(2).

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted).

[11] *Id.*

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

speculative level."[13] This requires a plaintiff to state claims raising a plausible likelihood that the defendant engaged in misconduct for which the law—and courts—can offer relief. Pleading facts "merely consistent with a defendant's liability" may suggest a cognizable claim, but does not rise to the requisite level of plausibility.[14] Bare and unsubstantiated allegations will not suffice, and courts need not accept merely conclusory claims, unwarranted factual deductions, or unreasonable inferences.[15]

**B.     Plaintiffs' § 1983 claims**

Plaintiffs' first through third claims allege violations of 42 U.S.C. § 1983 under the Eighth Amendment's Cruel and Unusual Punishment Clause and the Fourteenth Amendment's Due Process and Equal Protection Clauses.[16] Plaintiffs contend that NaphCare and its co-defendants, "while acting under color of law, were deliberately indifferent to Sanfilippo's personal safety by housing Sanfilippo with a self-admitted killer and person of mental instability."[17] Plaintiffs further allege that the defendants' "failure to create and maintain a safe environment in which Sanfilippo could await trial was the moving force behind Guilford's ability to kill Sanfilippo."[18]

An entity like NaphCare may not be held liable under § 1983 for the acts of its employees on a respondeat superior theory.[19] As the United States Supreme Court recognized in *Monell v. Department of Social Services*, plaintiffs must instead plausibly allege that "a deliberate policy,

---

[13] *Id.* (quoting 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

[14] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

[15] *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1984)).

[16] Doc. 33 at 5–6.

[17] *Id.*

[18] *Id.*

[19] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995); *Tsao v. Desert Palace*, 698 F.3d 1128, 1139 (9th Cir. 2012) (extending *Monell* liability to private entities acting under color of law).

custom, or practice" of NaphCare "was the 'moving force' behind the constitutional violation" Sanfilippo suffered.[20]  Plaintiffs inexplicably break the constitutional-violation component and the policy, practice, and custom component of their § 1983 claim into two separate counts that comprise their first and second causes of action.[21]  Because no plausible § 1983 claim against NaphCare can be pled without both of these components, I construe these first and second causes of action together as a single § 1983 claim to determine the sufficiency of this federal claim against NaphCare.

    **1.**    **First and second claims: *Monell* liability for civil-rights violations**

        ***a.***    ***Eighth Amendment—cruel and unusual punishment theory***

To the extent that plaintiffs' § 1983 claim rests on an Eighth Amendment theory, it must be dismissed.  Eighth Amendment rights include the right to protection from cruel and unusual punishment,[22] but they "d[o] not attach until after conviction and sentence"[23] and cannot form the basis for a pre-conviction detainee's conditions-of-confinement challenge.[24]  A detainee's right to "conditions of confinement that are not punitive" is guaranteed instead by the Fourteenth Amendment Due Process Clause.[25]  Sanfilippo was a pretrial detainee—not a prisoner—at the time of his death.[26]  Because his Eighth Amendment rights had not yet attached, to the extent plaintiff's § 1983 claim is premised on an Eighth Amendment deprivation—it is dismissed with prejudice.

        ***b.***    ***Equal protection theory***

Plaintiffs also allege a deprivation of Sanfilippo's rights under the Fourteenth Amendment's

---

[20] *Galen v. Cnty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007) (citing *Monell*, 436 U.S. at 694–95; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

[21] Doc. 33 at 5.

[22] *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 393 (1989)).

[23] *Graham*, 490 U.S. at 393 n.6 (1989) (citing *Ingraham v. Wright*, 430 U.S. 651, 671 (1977) (citation omitted); *Bell v. Wolfish*, 441 U.S. 520, 535, 535 n.16 (1979)).

[24] *Youngberg v. Romeo*, 457 U.S. 307, 321–24 (1982).

[25] *See id.*

[26] Doc. 33 at 4.

5

Equal Protection Clause. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."[27] "To prevail on an Equal Protection claim brought under § 1983, plaintiffs must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [Sanfilippo] based upon membership in a protected class."[28] Plaintiffs do not allege that Sanfilippo was a member of a protected class or that he received disparate treatment because of his class membership. Therefore, to the extent plaintiffs' § 1983 claim is based on an Equal Protection theory, it is dismissed.

### c.  *Fourteenth Amendment deliberate-indifference-to-safety theory*

Officials at detention facilities have "a duty to protect prisoners from violence at the hands of other [detainees]."[29] But "not . . . every injury suffered by one [detainee] at the hands of another . . . translates into constitutional liability for" detention-facility "officials responsible for the victim's safety."[30] When a detainee has been attacked by a fellow detainee, the facility can only be held liable for a constitutional violation if the victim can demonstrate that the deprivation is sufficiently serious and that the official was deliberately indifferent to the risk.[31] For purposes of this motion, I assume that the fatal attack on Sanfilippo constitutes a significantly serious deprivation of his rights. The salient question is whether plaintiffs have sufficiently alleged deliberate indifference.

As the Ninth Circuit explained in *Frost v. Agnos*, deliberate indifference is more than mere negligence; it requires "wanton" action:

---

[27] *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (internal quotation marks omitted).

[28] *Hartmann v. Cal. Dep't of Corrs. and Rehabilitation*, 707 F.3d 1114, 1123 (9th Cir. 2013) (internal quotation marks omitted).

[29] *Byerly v. Deputy Warden*, 246 F. App'x 512, 514 (9th Cir. 2007) (quoting *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) (internal quotation marks, ellipsis, and citation omitted)).

[30] *Id*. (quoting *Farmer*, 511 U.S. at 834).

[31] *Id.* (quoting *Farmer*, 511 U.S. at 834, 837); *Redman v. Cnty. of San Diego,* 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc) ("deliberate indifference is the level of culpability that pretrial detainees must establish for a violation of their personal security interests under the [F]ourteenth [A]mendment.").

> A prison official may be held liable if he acted with "deliberate indifference" to a substantial risk of serious harm. Mere negligence is not sufficient to establish liability. Rather, the official's conduct must have been "wanton," which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official.[32]

In objective terms, a deliberate-indifference claim must be "sufficiently serious" and the "prison official must 'know of and disregard an excessive risk to inmate health or safety.'"[33] Second, the test's subjective prong requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[34]

   Plaintiffs offer the right buzzwords in their claim: they allege that NaphCare "was deliberately indifferent to Sanfilippo's personal safety by housing Sanfilippo with a self-admitted killer and person of mental instability"[35] and that "it is the policy, practice and custom of the [CCDC], its supervisors, and its correctional officers, Metro and Naphcare to tolerate and ratify unreasonable, cruel and unusual punishment by . . . medical personnel in disregarding known risks to inmate health and safety [from] . . . being housed with mentally ill violent offenders," a risk that is "obvious," so "no reasonable . . . medical personnel could reasonably believe that housing Sanfilippo with Guilford was justified."[36] But these are just conclusions, and the facts—even with generous inferences—do not support them. The only facts plaintiffs have alleged are that Guilford was being held on "a charge of murder for killing his six year old nephew by suffocating him with a blanket," that "Guilford had a mental health history that was known to jail personnel of hearing voices,

---

[32] *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–04 (1991); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)) (internal citations omitted from block quotation); *see also Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1242–43 (9th Cir. 2010) (citing *Wolfish*, 441 U.S. at 535); *Farmer*, 511 U.S. at 834 (writing that "failure to prevent harm amounts to punishment where detention officials are deliberately indifferent").

[33] *Farmer*, 511 U.S. at 834–35.

[34] *Id.* at 835.

[35] Doc. 33 at 5.

[36] *Id.* at 6.

7

regularly speaking of spirits, and being diagnosed as bipolar," and though he was "prescribed medication for his mental issues while being housed" at the CCDC, he "refused" to take it, and "jail personnel" knew this.[37] Nevertheless, Sanfilippo, who had no history of violence, was housed with—and killed by—Guilford.[38]

These facts do not give rise to the inference that the contracted medical providers at the CCDC acted wantonly or with any deliberate indifference toward Sanfilippo. Plaintiffs have not alleged facts to suggest that Guilford presented a particular risk to his cellmate or even that NaphCare employees were aware that he was not taking his medication, and nothing suggests that CCDC officials or NaphCare employees had reason to anticipate an attack. Thus, plaintiffs have failed to state facts from which I can infer they have stated a plausible deliberate-indifference claim against NaphCare under *Iqbal* and *Twombly*.

There is a second deficiency that justifies 12(b)(6) dismissal: even if plaintiffs had stated a plausible deliberate-indifference claim, they have not sufficiently pled NaphCare's liability under a *Monell* theory. To plead NaphCare's liability under *Monell*, plaintiffs allege that "it is the policy, practice, and custom of . . . NaphCare to tolerate and ratify unreasonable, cruel and unusual punishment by [CCDC] . . . medical personnel in disregarding known risks to inmate health and safety."[39] But plaintiffs also allege that the CCDC has "cells to house mentally ill inmates in, away from the general jail population."[40] This suggests there was a policy of housing mentally ill detainees separately—a policy that was apparently ignored when housing Guilford and Sanfilippo together. This allegation about a specific policy contradicts plaintiffs' conclusory allegation that there was some general policy, practice, or custom to "tolerate and ratify unreasonable, cruel and

---

[37] *Id.* at 4.

[38] *Id.* at 4–5.

[39] *Id.*

[40] *Id.* at 4.

8

unusual punishment" at the CCDC by "disregarding known risks to inmate health and safety."[41]  It also suggests that the alleged constitutional deprivation was not the result of a deliberate policy, practice, or custom as *Monell* requires, but rather the result of a single failure or violation of that policy, practice, or custom by an unidentified employee.  For *Monell* liability to attach, the challenged action must be the standard operating procedure of the municipality, not merely a single occurrence by a non-policymaking employee.[42]  Plaintiffs, by their own allegations, have essentially pled themselves out of a plausible municipal-liability theory.  Accordingly, their § 1983 claim based upon a Fourteenth Amendment deliberate-indifference-to-detainee-safety claim is also dismissed.

### 2.  Third Claim: § 1983 claim for failure to train and supervise

As their third claim for relief, plaintiffs plead an additional § 1983 claim based on an alleged failure to properly train and supervise CCDC employees.  Although the failure to train and supervise may give rise to a § 1983 claim,[43] plaintiffs have not alleged any failure to train or supervise on the part of Naphcare or any facts to even suggest that Sanfilippo's death resulted from a failure to train or supervise Naphcare employees.  Plaintiffs' third claim for relief states only that "it was the policy and custom of [the LVMPD] to inadequately supervise and train its detention officers . . . by failing to implement safety measures to protect non-violent inmates from violent inmates . . . ."[44]  Plaintiffs have therefore not stated this claim against NaphCare, and it is dismissed as against NaphCare.

## II.  State Claims

Plaintiffs also allege that NaphCare is liable for Sanfilippo's death under negligence, gross-negligence, wrongful-death, and negligent-supervision-and-training theories found in Nevada tort law.  NaphCare asserts three bases for dismissing plaintiffs' state claims.  First, NaphCare contends that plaintiff's claims are essentially medical malpractice claims and plaintiffs failed to first exhaust

---

[41] Doc. 33 at 5–6.

[42] *See Clouthier v. Cnty. of Contra Costa,* 591 F.3d 1232, 1249 (9th Cir. 2010); *City of Okla. v. Tuttle,* 471 U.S. 808, 823–24 (1985).

[43] *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

[44] Doc. at 6.

9

the screening requirements under NRS § 41A.071.[45] Second, NaphCare argues that discretionary-function immunity under NRS § 41.032 shields it from liability.[46] Third, NaphCare argues that plaintiffs' allegations are too factually sparse to state a cognizable claim for relief.[47] I find that plaintiffs' theories are so thinly pled that I cannot even determine whether NRS §§ 41A.071 or 41.032 apply here, and I dismiss each of these claims under *Iqbal* and *Twombly* because they are too lacking in factual allegations to state any of these intended tort claims.

### A.  Plaintiffs' fifth cause of action: negligent supervision and training

Plaintiffs' fifth cause of action suffers from the same deficiency as its federal counterpart in plaintiffs' third claim for relief: it does not allege this claim against Naphcare.  Plaintiffs allege only that "Metro had a mandatory duty to properly and adequately train and supervise its officers and personnel under their [sic] control," but "Metro failed to take necessary, appropriate and adequate measures to prevent the violation of Sanfilippo's constitutional rights," and, "as a direct and proximate result of Metro's negligence as alleged herein," damages are owed.[48]  To the extent that plaintiffs intended to plead this fifth cause of action against NaphCare, they failed to do so, and it is dismissed against NaphCare.

### B.  Plaintiffs' claims are too vague to determine the applicability of Nevada's statutory prerequisites for medical malpractice claims or discretionary-act-immunity statute.

NaphCare argues that plaintiffs' state-law tort claims are essentially medical-malpractice claims governed by NRS Chapter 41A, and NRS § 41A.071 requires dismissal of any action alleging medical malpractice not accompanied by an expert affidavit.[49]  Plaintiffs did not obtain an expert affidavit to support their state-law claims, and NaphCare argues that NRS § 41A.071 requires their

---

[45] Doc. 45-1 at 9–12.

[46] *Id.* at 12–13.

[47] *Id.* at 13–14.

[48] Doc. 33 at 7.

[49] *Id.*

10

dismissal.[50]

### 1. Plaintiffs do not sufficiently plead the nature of NaphCare's duty

The Nevada legislature broadly defines medical malpractice as "the failure of a physician, hospital or employee of a hospital, in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances,"[51] but the Nevada Supreme Court recognized in *Egan v. Chambers* that professional negligence claims are exempt from the affidavit requirement.[52] In order for me to determine whether plaintiffs' negligence-based claims are barred by their failure to obtain the affidavit required by NRS 41A.071, I must first determine whether plaintiffs are alleging medical malpractice as defined by NRS 41A.009.

To determine whether these negligence-based claims are medical-malpractice claims, I must consider what legally cognizable duty plaintiffs are alleging NaphCare had and breached.[53] Unfortunately, plaintiffs' state-law theories are so thinly pled that it is impossible to tell what nature of negligence, gross negligence, or wrongful conduct they are alleging against NaphCare. Plaintiffs allege that "The conduct of Defendants, and each of them, as set forth herein did not comply with the standard of care to be exercised by reasonable . . . medical personnel"[54] and that NaphCare is under contract with Clark County "to provide medical services to detainees at the" CCDC, both of which

---

[50] Doc. 45-1 at 14–16.

[51] Nev. Rev. Stat. § 41A.009.

[52] *Egan v. Chambers*, 299 P.3d 364, 367 (Nev. 2013); *see also DeBoer v. Sr. Bridges of Sparks Fam. Hosp.*, 282 P.3d 727, 731–32 (Nev. 2012) (recognizing that "medical facilities should be required to conform to normal standards of reasonableness under general principles of tort law *when performing nonmedical functions*") (emphasis added)).

[53] *See, e.g.*, *Ctr. for Cmty. Action & Envtl. Justice v. BNSF R. Co.*, 764 F.3d 1019, 1023 (9th Cir. 2014) (quoting *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) ("We will uphold a district court's decision to dismiss "where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim."); *Ileto v. Glock Inc.*, 349 F.3d 1191, 1206 (9th Cir. 2003) ("To establish liability in negligence, it is a fundamental principle of tort law that there must be a legal duty owed to the person injured and a breach of that duty"); *Bearden v. City of Boulder City*, 507 P.2d 1034, 1035-36 (Nev. 1973) (citing *Hart v. Kline*, 116 P.2d 672 (Nev. 1941), and noting that the difference between ordinary negligence and gross negligence is one of degree).

[54] Doc. 33 at 6.

suggest a medical-care-provider duty.[55] But these allegations do not rule out the possibility that plaintiffs are alleging general, non-medical negligence because plaintiffs also allege that the "duty" breached by the "Defendants, and each of them" was "to act with reasonable care in housing Sanfilippo" and in "providing safe housing."[56] And in their wrongful-death claim, they suggest that NaphCare's duty was even more generally one "to keep Sanfilippo safe while in their care, custody and control."

Had plaintiffs offered some facts to explain what NaphCare's role in this housing or custody decision was, I could better decipher what the nature of the duty they allege is. But these facts are absent from the complaint and, without them, I cannot determine whether plaintiffs have sufficiently identified any legal duty on which these negligence-based claims may be based against this medical-care provider, let alone whether that duty categorizes these claims as medical-malpractice ones for which NRS 41A.071 requires an affidavit.

### 2. The lack of factual specificity forecloses a discretionary-immunity analysis.

This lack of factual specificity also impairs my ability to determine whether NaphCare is, as it claims, an immune contractor shielded from suit under NRS 41.032. Nevada has retained Eleventh Amendment immunity for municipal contractors performing discretionary acts.[57] "Decisions at all levels of government, including frequent or routine decisions, may be protected by discretionary-act immunity, if the decisions require analysis of government policy concerns."[58] To determine whether a claim is barred by discretionary-act immunity, the Nevada Supreme Court

---

[55] *Id*. at 3.

[56] *Id*. at 6–7.

[57] *See* Nev. Rev. Stat. Ann. §§ 41.031 & 41.032(2) ("[N]o action may be brought . . . against an immune contractor or an officer or employee of the State or any of its agencies or political subdivisions on the part of the State or any of its agencies or political subdivisions . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . ."); *Goodman v. Las Vegas Metro. Police Dep't*, 963 F. Supp. 2d 1036, 1060 (D. Nev. 2013) (citing *Travelers Hotel, Ltd. v. City of Reno*, 741 P.2d 1353, 1354–55 (1987)) (extending immunity to municipalities).

[58] *Martinez v. Maruszczak*, 168 P.3d 720, 727, 729 (Nev. 2007).

examines "whether [the] judgment is of the kind that the discretionary-function exception was designed to shield."[59] Plaintiffs' failure to identify what judgment—or whose judgment—gives rise to NaphCare's liability for the state-law-tort claims they have pled also prevents me from making any educated determination at this time whether NaphCare is an immune contractor under Nevada law.

In sum, plaintiffs' state-tort claims are too vague to give NaphCare adequate notice of the basis of these claims or permit me to make a fair determination if the claims are barred under Nevada's medical-malpractice-affidavit requirement or discretionary-function immunity. Accordingly, plaintiffs' fourth, sixth, and seventh claims against NaphCare are dismissed for failure to state a plausible claim.

### III.  Leave to Amend

Having dismissed all claims against NaphCare,[60] I now consider whether to permit plaintiffs leave to amend their claims. When granting a motion to dismiss, courts "freely give leave [to amend] when justice so requires."[61] The tendency of federal courts is to permit new chances. The Ninth Circuit directs that "[t]his policy is to be applied with extreme liberality."[62] The Supreme Court has also counseled that, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the

---

[59] *Id.* at 728.

[60] Even though I am dismissing all claims against NaphCare, which includes any prayer for punitive damages against NaphCare, because plaintiffs may amend, I also note that I reject NaphCare's argument that plaintiffs cannot seek punitive damages against it. Although municipalities are generally immune from punitive damages for § 1983 violations, primarily because "'officials' malice should not be attributed to the taxpaying citizens of the community,'" *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259–60 (1981), NaphCare is a private entity and is therefore not immune from punitive-damages liability arising from a § 1983 violation.

[61] Fed. R. Civ. P. 15(a)(2); *see also Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (citing Fed. R. Civ. P. 15(a); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)) ("In general, a court should liberally allow a party to amend its pleading").

[62] *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)) (internal quotation marks omitted).

13

merits."[63]

### A.     Federal claims

To the extent that plaintiffs can plead facts to support their § 1983 claim against NaphCare on either an Equal Protection or deliberate-indifference-to-safety theory, and while satisfying *Monell*, they may file an amended complaint. Plaintiffs are reminded that neither their first or second claims for relief, as currently pled, states a complete § 1983 claim against NaphCare; facts supporting both a constitutional violation *and* the *Monell*-required, moving-force policy, custom, or procedure must be pled to state a proper municipal-liability claim.[64] If plaintiffs choose to amend their complaint to plead a proper § 1983 deliberate-indifference-to-safety claim, it should be based on a Fourteenth Amendment violation, not an Eighth Amendment deprivation. I am also denying leave to amend to state a failure-to-supervise-or-train claim against NaphCare under a § 1983 theory because plaintiffs have not offered a single fact to suggest that Sanfilippo's death was the result of a failure in NaphCare's supervision or training of its employees, and I find that leave to amend this claim would be futile.

### B.     State law claims

Plaintiffs are also permitted leave to amend their fourth, sixth, and seventh claims against NaphCare if they can plead facts giving rise to cognizable legal bases for these claims. They will not, however, have leave to replead their fifth cause of action against NaphCare because they have not demonstrated any basis for a negligent supervision and training claim against this defendant, and I find that amendment would be futile. Plaintiffs are cautioned that they should carefully consider the impact, if any, of NRS 41A.071 and NRS 41.032 in repleading their claims, and they should be mindful of the Nevada Supreme Court's holding in *Butler v. Bayer* that "prison officials have a specific duty to protect inmates only when they actually know of or have reason to anticipate a

---

[63] *Forman v. Davis*, 371 U.S. 178, 182 (1962).

[64] *See supra* at pp. 4-5.

specific impending attack."[65]

### Conclusion

For all the reasons stated above, and with good cause appearing, it is hereby ORDERED that NaphCare's Motion to Dismiss **[Doc. 45] is GRANTED in part and denied in part** as stated herein.  All of plaintiffs' claims against NaphCare are dismissed; their claims against NaphCare for Eighth Amendment violation and for failure to train or supervise are **dismissed with prejudice** and without leave to amend because amendment would be futile.  To the extent that plaintiffs believe they have facts to support their claims against NaphCare for which amendment is permitted in section III herein, **plaintiffs shall have until February 17, 2015, to file a second amended complaint**.

DATED January 27, 2015.

_____
Jennifer A. Dorsey
United States District Judge

---

[65] *Butler* ex rel. *Biller v. Bayer*, 168 P.3d 1055, 1064 (Nev. 2007) (adopting majority rule from *Cupples v. State*, 861 P.2d 1360, 1371–72 (Kan. 1993)).

15